IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO.: _____

RALPH HARDY, and those
similarly situated under
the jurisdiction of the
State of Colorado Criminal
Justice System
        Plaintiffs,

VS

MEGAN RING et al
BRIAN MASON et al
RICHARD REIGENBORN et al
        Defendant.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO
JUL 05 2022
JEFFREY P. COLWELL
CLERK

## CIVIL ACTION - JURY DEMAND

1. This is a Civil Rights Action pursuant to the Civil Rights Act, Title 42 U.S.CA. Section 1983, 1985(3)

## JURISDICTION

2. This Court has Jurisdiction over Civil Rights violations and Constitutional Deprivations under the Federal Civil Rights Act.

## CONDITIONS PRECEDENT

3. All administrative remedies have been sought to these claims, and are now deemed exhausted.

## COLOR OF LAW

4. The named defendant's herein were acting as officers, agents or employees of the State of Colorado, under the color of law.

## PARTIES

5. Plaintiff Ralph Hardy is a pro se pretrial detainee currently being detained in the Adams County Jail #21-7798 150 N. 19th Ave F-21-18, Brighton, Co. 80601.

6. Those similarly situated are those who were in custody at the Adams County jail between November 23, 2020, to date, and who spoke with their defense counsels over the Webex or Zoom communication applications, from any place inside the Adams County jail, during those time frames.

7. Defendant Megan Ring is the elected State Public Defender, and et al., means the Office of the Public Defender and all those who are employed in the office of the Public Defender, including the branch office of the Alternate Defense Counsel and its employees. Defendant Ring is being sued in her official and individual capacities. Those working in the office of the Public Defender and the Office of Alternate Defense Counsel are being sued in their professional and individual capacities as well. 1300 Broadway #400, Denver, Co. 80203.

8. Defendant Brian Mason is the elected District Attorney in the 17th Judicial District, and et al. means all employees of the office of the District Attorney in Adams County Colorado, 1000 Judicial Center Dr. Brighton, Co. 80601. Defendant

3.

Mason and his subordinates are being sued in their professional and individual capacities.

9. Defendant Richard Reigenborn is the elected Sheriff of Adams County Colorado, and et.al means all those under the jurisdiction of the Adams County Sheriff's Department and the Adams County Jail. These defendants are being sued in their professional and individual capacities. 4430 S. Adams County Pkwy. Brighton, Co. 80601. They are being sued in their professional and individual capacities.

PRIOR LAWSUITS

10. Plaintiff Ralph Hardy previously filed a lawsuit with this Court, styled: Ralph Hardy vs. No named defendants, Case number unknown. Mr. Hardy was unable at that time to cure the defects outlined in the Courts Order, and the Action was dismissed without Prejudice.

4.

CAUSE OF ACTION

11. This action is brought in good faith, and not for any intent to intimidate, harrass, or burden the defendants in any way.

12. This action presents multiple questions of law that would be common and typical to at least twenty thousand criminal defendants who are either convicted and sentenced County or State prisoners or probationers, pre-trial detainees, and direct halfway house sentences.

QUESTIONS

A. Does defense counsel have the authority to waive the attorney-client privilege on behalf of their client, without their knowledge in order to protect themselves or any other party from being exposed to the COVID-19?

B. Did defense counsels waiver or failure to clients attorney-client privilege, without the clients knowledge infringe upon the clients fifth amendment right to remain silent?

5.

C. Did the waiver of the attorney-client privilege by defense Counsel, without the Clients knowledge, create a structural attorney-client conflict of interest, on the grounds that defense Counsel was now unable to challenge the admissability of evidence, that Counsel knew was tainted as a result of the waiver, but was under a cloak of admissability by procedural rules of "Discovery", for fear of being exposed in an unlawful tacit agreement, contract, or conspiracy, that they knew, or reasonably should have known would violate the Constitutional rights of their client?

D. Did the intentional waiver of the attorney-client privilege by defense Counsel, without the Clients knowledge, infringe on the Clients Sixth amendment right to effective assistance of Counsel, on the grounds that defense Counsel was unable to adequately test the adversarial process against their client without being exposed in a tacit agreement, contract, or conspiracy, that they knew or reasonably should have known was violative of the Clients fifth, Sixth and fourteenth

6.

amendment rights under the Constitution of the United States.

E. Did the tacit agreement, contract, or conspiracy entered into by the defendants in this case, that they knew or reasonably should have known would prevent the free exercise of the plaintiff's clearly established right to remain silent in the criminal process; would create an attorney-client conflict of interest; would interfere with the right to effective assistance of counsel, and prevent the accused from fair process due under the law, rise to the level of misconduct that would require a blanket reversal of all criminal convictions, guilty pleas and sentences of those harmed by the governments conduct in this case?

7.

13. Should it be determined that the conduct alleged against the agencies and defendants who are within the 17th judicial district extends to the other judicial districts within the state this Court would still have concurrent jurisdiction over the added plaintiffs which could bring the total number of those harmed by the governmental misconduct to well over fifty thousand people.

## CLAIM ONE

14. Plaintiff alleges, that on or about November 23, 2020, the effective date of administrative order 2020-01, that the defendants named herein entered into a tacit agreement, contract, or conspiracy, that they knew or reasonably should have known would violate the plaintiff's clearly established Constitutional rights to remain silent, as guaranteed by the fifth amendment to the United States Constitution, and contrary to the Civil Rights Act pursuant to Title 42 U.S.C.A Sections 1983 and 1985 (3).

8.

FACTS AS TO CLAIM ONE

15. In the wake of the COVID-19 pandemic, the defendant, Megan Ring, acting in her official capacity as an officer, agent, or employee of Adams County Colorado, and the State of Colorado, and her subordinates, entered into an agreement with the office of the Sheriff to allow jail deputies to eavesdrop, record or otherwise target attorney-client communications, in order to prevent attorney's and sheriffs investigators from being exposed to the COVID.

16. Ten computer terminals, with five on each side of the room established the virtual courtroom inside the jail. A law enforcement desk was strategically placed in the room that would allow jail deputies to see and hear all communications over the Webex and Zoom applications being used to conduct, as pertinent here, the criminal court docket. Jail deputies were always armed with cell phones, capable of recording and live feeding the court business,

9.

including the attorney client communications from the Webex and personal Zoom accounts belonging to attorney's.

17. Policy and procedure regarding the Webex and Zoom communications, especially the attorney client communication, required jail deputies to be able to see, hear, and record those communications.

18. When criminal defendants were arrested and brought to jail, the following adopted policy and procedure was carried out. The accused would be placed in a hallway with a jail laptop at full volume and no headphones. The laptop was always strategically placed under the control tower talking vent that was used for the floor deputies to communicate with the tower deputies. The talking vent was across from the floor deputy seargents office where two additional deputies were armed with cell phones, in the posture of recording. The first contact made with the accused over the Webex, was by an appointed public defender that was appointed strictly for first advisement. Those, newly, arrested, were either under the

10.

influence of drugs and alcohol. So, when the public defender would make contact over the webex, it would trigger an alcohol or drug induced rant about the charges against them. They would unwittingly divulge sensitive facts or circumstances about their charges, which was being eavesdropped by law enforcement. Following this drug or alcohol induced rant in front of law enforcement, whom the appointed public defender knew was listening to the conversation, the accused would then be put in contact with the first advisement judge, who would then advise the accused of their right to remain silent. Plaintiffs contend that this was an intentional and maliciously designed procedure that was intended to capture incriminating statements from the accused before being made aware of their right to remain silent, as clearly established, and guaranteed under the fifth amendment to the United States Constitution.

CLAIM TWO

19. Plaintiffs allege, that the defendants, Megan Ring et al, Brian Mason, et al, and

11.

Richard Reigenborn, et al, while acting as an officers agents or employees of the State of Colorado, and Adams County Colorado, entered into a tacit agreement that they knew, or reasonably should have known would prevent the Plaintiffs exercise of their right to the attorney client privilege, as guaranteed by the sixth amendment to the united States Constitution, and created a structural conflict of interest in the attorney client relationship.

FACTS AS TO CLAIM TWO

20. In this case, employees of the Adams County Jail have come forward with verbal statements regarding the agreements made between the defendants. First, there were two blanket deceptions agreed to by the defendants that would ensure law enforcement to eavesdrop and record attorney-client communication. The first deception was a covert waiver of the plaintiffs' attorney-client privilege by defense counsel's of which the plaintiffs knew nothing about. The second deception was that the county jail

12

was under quarranteen and personal in-house attorney-client visits were not being allowed.

21. Specifically, jail deputies have made it clear that there was a blanket waiver of all criminal defendants rights to the attorney client privilege, so that statements and evidence could be gathered by jail deputies, who were already under exposure to the COVID-19. This, in turn, would prevent face to face contact between the accused, and investigators in those criminal cases. Even more specifically, the investigators, over the criminal cases, did not want to meet face to face with possible COVID carriers. The tacit agreement was made between the three defendants that would allow jail deputies to obtain statements, evidence, and facts from the attorney-client communications, and then provide that information to investigators, who would then compile their affidavits and written reports to be submitted to the district attorney's office for processing; and the filing of criminal charges against the accused. The problem with this procedure was that tainted evidence, which

13.

was obtained by an invalid waiver to the attorney client privilege by the plaintiff's own defense counsel, was now able to be enmeshed with any other admissable evidence, and then be submitted by State Court discovery rules, and only those in the agreement were aware of the evidence or statements being used against the accused, was unconstitutionally tainted.

22. Plaintiff's contend, that fear of being exposed in the conspiracy prevented their own defense counsel's from challenging the constitutionality of the evidence that was being used to induce plea agreements or obtain jury verdicts to the prosecutions favor. Moreover, being able to obtain statements, defense strategies and other sensitive case information from the attorney client communications, allowed the prosecution to completely script their own outcome to the adversarial process, and prevented defense counsel from being able to adequately test the adversarial process against their clients.

14.

Conversations

23. Criminal Defendants who were reluctant to speak over the webex or zoom applications in front of law enforcement were met with threats, intimidation and deception tactics by law enforcement. Specifically, plaintiffs were told that they would be required to sign a refusal to go to Court. The ramifications for signing the refusal, as stated by law enforcement, was that it would make the judge angry with them for refusing Court; the refusal would toll the Constitutional Speedy trial Clock in their case, and they would be required to remain in jail until they agreed to talk about their case in front of law enforcement, or until the pandemic was over, and defense Counsel would be permitted to book a personal visit and come to the jail. Since nobody knew when the pandemic would come to an end, if ever, defendants were under the impression that they could potentially sit in jail for months or even years before the pandemic would be over. So, in order to protect

---

1 This should have been taken as an invocation to the privilege.

15

their speedy trial rights, which could free them from jail, they were made to barter one Constitutional right for another. Specifically, the accused was deceived into speaking about his case in front of law enforcement to save his speedy trial rights.

24. There were multiple occasions when jail deputies would approach the accused after an attorney client visit over Webex or Zoom, and elaborate on the attorney-client conversation. Jail deputies would often provide legal advice to the accused that would make sense to them and they would mention these things to their attorney's who would provide the accused with a different legal point of view, which would often lead to the accused trying to fire the attorney over a tactical conflict, as well as a moot point; and the attorney-client relationship would then be strained throughout the process.

25. On more than one occasion, plain clothes police officers were caught with hidden recording devices in the virtual courtroom.

16.

26. There were instances when the accused would point the computer camera at law enforcement in the room pointing a cell phone in their direction and show judges that their communications were being recorded by law enforcement, which then caused jail administrators to blur camera's on the computers to prevent law enforcement from being exposed in the room.

27. Between October 20, 2021 and October 30, 2021, Plaintiff Hardy caught a law enforcement official on a Homeway video, stating, that jail officials had orders to listen to attorney client communications

28. On June 20, 2022, deputy Spence came forward and announced to the whole open bay living unit That jail deputies were given permission by plaintiff's own defense attorney's to eavesdrop all attorney client conversations. Deputy Spence then informed the inmates in the open bay pod, that they were able to capture all communications over the Webex and private Zoom accounts and recall them at any time for review.

17.

29. Plaintiff's contend that these acts of misconduct were intentional, malicious and strategically designed to prevent, impinge, violate or otherwise deprive them of their clearly established rights to a fair adversarial process, as guaranteed by the Fourteenth amendment to the United States Constitution

30. Plaintiff contend that these acts of misconduct by the defendants were intentionally and maliciously designed to prevent the free exercise of their clearly established right to remain silent as guaranteed by the Fifth amendment to the United States Constitution, in order to effectuate their own personal and professional agendas to the Criminal process, in violation of the Federal Communications Act, as well as the Federal Criminal Code pursuant to Title 18 U.S.C.S. Sec. 241, 242, and 245 of the United States Code.

RELIEF SOUGHT

WHEREFORE, Plaintiffs request the following relief:

18.

31. Plaintiffs request that the defendants pay all costs and attorney fees associated to this case.

32. Plaintiffs request (50,000) fifty thousand dollars in compensatory or nominal damages, for each member of the class, should this Court certify this action as a class action; for pain and suffering from being incarcerated as a result of the unconstitutional conduct by the defendants, who exceeded their professional authority while in performance of their respective duties, under the color of law.

33. Plaintiffs seek (60,000,000) sixty Million in Punitive Damages, for the intentional and malicious conduct, that they knew or reasonably should have known was a violation of their Civic Duties, the Rules of Judicial Conduct; the Canon rules; their oaths of office as an elected official; the Federal Communications Act; and various State and Federal Criminal Codes.

19.

34. Plaintiff's request a reversal of all Criminal Convictions, Sentences, plea agreements and pending Charges of those harmed by the government misconduct described herein; and that those Charges be dismissed with prejudice.

35. Grant any such other and further relief this Court deems just and proper.

I declare, under the penalties of perjury that the facts and matters herein, are true and correct.

Respectfully Submitted,

*Ralph M. Hardy*

RALPH HARDY
ACDF #
150 N. 19th Ave
Brighton, Co. 80601

20.